(No. 22036.—■■■■■)

ELIZABETH POPE *et al.* Appellees, *vs.* ARTHUR L. KITCHELL *et al.* Appellants.

*Opinion filed December 22, 1933.*

PROVINE & WILLIAMS, for appellants.

HILL & BULLINGTON, for appellees.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

We are asked by this appeal to review a chancery decree of the circuit court of Montgomery county involving the partition of certain lands and the construction of a will.

The facts are not in dispute. William J. Kitchell died testate in January, 1929. His will, executed in January, 1926, was probated and admitted to record soon after his death. Surviving him as his heirs-at-law and legatees were nine children, all of age and under no disability. His wife, Mary Kitchell, pre-deceased him in 1907. A daughter, Vera, the wife of O. G. Black, died after the mother but before the testator. The will, after providing for the payment of debts and expenses of administration "with reasonable diligence after my decease," and after disposing of household effects, provided, in part, as follows in item 3: "I direct the executors of this, my last will and testament, or the survivor of them, to convert into money within two years after my decease, all chattel and other personal property of mine not hereinabove disposed of, and all the real estate that I shall own at the time of my decease, said real estate now at the date of this will being more particularly described as follows, to-wit:" Here follows a description of three tracts of land. Notwithstanding the declaration of the testator that he owned all of the land described in his will, the record shows that he only owned part of it in fee. For convenience the land involved has been grouped into three divisions. Tract 1 includes all the land owned solely by the testator in fee simple at the time of his death. Tract 2 includes all the land owned solely by Mary Kitchell in fee simple at the time of her death. Tract 3 includes all the land owned by the testator and Mary Kitchell in fee simple, as tenants in common, at the time of her death. The record shows that during the lifetime of his wife the testator exercised dominion over her land in the same manner and to the same extent as he did over his own. This embraced the management, up-keep, payment of taxes and control of the rents and profits. The death of his wife did not change the manner or extent of this dominion. Since the record shows nothing to the contrary, we must assume that the testator sincerely believed

himself to be the sole owner in fee of all three tracts of land after the death of his wife.

After the will was admitted to record, two sons, Arthur L. and Charles D. Kitchell, assumed their duties as co-executors on March 22, 1929, but were dilatory in settling the affairs of the estate. An inventory was not filed until January, 1932, which was subsequent to the filing of the bill for partition. This inventory listed tract 1 and a one-half interest in tract 3 as belonging to the estate. Tract 2 was not listed. A report by the executors was not filed until the same time, and then only after some of the heirs had threatened appropriate court action to compel it. This report disclosed that some of the heirs, including the executors, were indebted to the estate. No attempt was ever made by the executors to sell all or a portion of the land within the two-year period directed by the will or at any time thereafter.

Elizabeth Pope, one of the children of the testator, filed the original bill for partition in October, 1931. This bill was framed upon the theory that the testator owned all of the three tracts in fee simple. The answer to this bill for the first time disclosed that the testator owned the fee to tract 1, an undivided one-half interest in tract 3, and that tract 2 had belonged entirely to Mary Kitchell. By their answer the executors claimed that the title was in them, with power of sale; that inasmuch as the testator had attempted to dispose of the lands of his wife as his own property and his children had accepted the provisions of the will, the power of sale reposing in them covered the lands also owned by Mary Kitchell at the time of her death. The executors also filed their cross-bill, which, after amendment, contained substantially the same averments as their answer, and asked the court to construe the will to the end that the executors would be decreed to have full power and authority to make a sale of all of the land mentioned in the will of the testator, including the lands which belonged to

Mary Kitchell, and further averred that this power of sale was still existent notwithstanding the lapse of the two-year period prescribed in the will for such sale. Elizabeth Pope, after the filing of the answer and cross-bill, amended her original bill of complaint, and was joined as parties complainant by three other children of the testator. The amended bill was not filed until after the evidence was largely agreed upon and a satisfactory record made up before the chancellor. When it developed that O. G. Black, as the surviving husband of the deceased daughter, Vera, possessed an interest in the lands that had belonged to Mary Kitchell, the amended bill was allowed to be filed.

The decree of the court, based upon the amended bill of complaint, found that the testator owned the whole fee to tract 1, that Mary Kitchell owned the whole fee to tract 2, and that the fee to tract 3 had been owned as tenants in common by the testator and his wife, Mary; that when Mary died the testator became entitled to dower in the lands owned by her but it had never been awarded or set off to him. The decree also found that the testator continued in possession of all three tracts, receiving the rents, income and profits therefrom and paying all taxes; that the heirs of Mary, to-wit, Elizabeth Pope, Nellie K. Anderson, Helen D. Balsley, Arthur L. Kitchell, Roy W. Kitchell, John G. Kitchell, Charles D. Kitchell, Florence Bowman and Vera Kitchell Black, each took an undivided one-tenth interest therein in fee, subject to the dower estate of the testator. The decree further found that O. G. Black, husband of Vera K. Black, was entitled to one-half of an undivided one-tenth interest of his deceased wife, the other one-half descending as follows: Two parts to the testator and one part to each of the testator's nine children surviving Vera. The decree therefore found that the testator died owning all of tract 1 in fee, an undivided 2/110th interest in tract 2 and an undivided 57/110th interest in tract 3,

and that the nine children, as heirs of Mary Kitchell, and O. G. Black, as the heir of Vera K. Black, owned the remainder of tracts 2 and 3. It further found that although the testator declared in his will that he owned all of the three tracts and directed his executors to sell all of them within two years after his death, he possessed no power to dispose of the land owned by the heirs of Mary Kitchell and by Black; that in this respect the will constituted a cloud upon the title of the land owned by the heirs of Mary Kitchell and Black, and that the power of sale given by the testator to the two executors had not been exercised within the two-year period directed by the will and had therefore lapsed and expired, and the executors had no authority, at the time of the entry of the decree, to sell all or any part of the three tracts or to execute deeds therefor. The decree ordered partition under the amended bill of complaint and dismissed the cross-bill for want of equity.

Two questions are presented by this appeal. The first is whether under the third paragraph of the will the testator caused a conversion of his real estate into personal property, thereby preventing his children from taking an interest in the lands but in lieu thereof giving them an interest in the proceeds to arise from the sale thereof. The second question grows out of the fact that, notwithstanding his lack of title, the testator endeavored to make the provisions of the will apply to the lands belonging to his children and O. G. Black. Must the children take under the will as a whole and abide by the endeavor of the testator to dispose of their property in order to take from him the lands which he owned? The appellants contend that the doctrine of election applies, basing this claim upon the assumption that the children of the testator had accepted the provisions of the will and cannot exercise any other right or claim to the estate. We will first undertake to dispose of the second question.

An early case in this State upon the doctrine of election arose in *Wilbanks* v. *Wilbanks,* 18 Ill. 17. There the testator devised to a third person an estate belonging to a son, giving to the son a legacy. The testator disposed of all his personal and real estate, the objects of his bounty being persons who would have secured the estate if the testator had died intestate. We held that inasmuch as the provisions of the will had been accepted by the plaintiffs, equity would estop them from all claim to their own estate which was given to the defendant. However, if the election be made without the person making it being in possession of the material facts, that election will not prevent a subsequent assertion of rights after becoming cognizant of those facts. In *Gorham* v. *Dodge,* 122 Ill. 528, a testatrix bequeathed $700 to a daughter and devised her homestead to her son. The daughter accepted the bequest, and it was held that she was estopped from enforcing a parol agreement of the testatrix to give the homestead to the daughter. We said that the case of *Wilbanks* v. *Wilbanks,* *supra,* controlled, and quoted with approval what was said by Chief Justice Shaw in *Hyde* v. *Baldwin,* 17 Pick. 303, *i. e.*: "It is now a well settled rule in equity that if any person shall take any beneficial interest under a will he shall be held thereby to confirm and ratify every other part of the will, or, in other words, a man shall not take any beneficial interest under a will and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat or in any way prevent the full effect and operation of every part of the will." In the case of *Buchanan* v. *McLennan,* 192 Ill. 480, this doctrine of election was again applied and extensive quotations were made from *Wilbanks* v. *Wilbanks, supra.* In *Burns* v. *First Nat. Bank of Joliet,* 304 Ill. 292, a legatee had accepted the benefit of monthly payments given under a will. The acceptance of those payments, it was held by this court, prevented her from subsequently trying to com-

pel the specific performance of an alleged oral promise made by the testator to convey to the legatee, in return for service rendered, property otherwise disposed of by will. It was held that the doctrine of election was applicable, the case of *Wilbanks* v. *Wilbanks,* and many intervening cases dealing with the doctrine, being cited with approval.

The record in the present case shows conclusively that in the first instance the heirs of the testator accepted the provisions of the will. Elizabeth Pope and Helen D. Balsley asked the executors to sell the land, while others voiced the opinion that the executors should not sell because the times were inopportune. None of the children questioned the right or manner of the testator's disposal of the three tracts. Because of the meager amount of evidence furnished from the witness stand it was necessary for us to resort to the pleadings to ascertain controlling facts as to whether a binding election was or was not made. Elizabeth Pope was the sole complainant in the original bill for partition, to which the executors and other heirs were made defendants. This bill was evidently drawn upon the supposition that the testator actually owned the fee to all of the three tracts described in his will. The deceased child, Vera K. Black, was not even mentioned in the bill, nor was her surviving husband, O. G. Black. This bill alleged that the heirs were tenants in common of the three tracts, each owning an undivided one-ninth share as the heirs of the testator. There is an entire absence of allegation that any interest in the tracts descended to them as the heirs of Mary Kitchell. The executors, answering this bill in their official capacity and as individuals, stated that the testator owned the whole fee to tract 1 and an undivided one-half interest in fee simple to tract 3. They averred that Mary Kitchell owned all of tract 2, and that upon her death intestate her estate vested in the nine children, subject to the dower right of the testator, which was never assigned. Vera K. Black again was not mentioned, nor

was her surviving husband, O. G. Black. The cross-bill of the two executors made the other seven children parties defendant. Black and his wife, Vera, again were not mentioned. On the contrary, the cross-bill stated positively that when the testator died, his nine children (omitting Vera) took all the land owned by Mary Kitchell, in equal shares. The answer of Elizabeth Pope, Marea Large, Nellie K. Anderson and Helen D. Balsley to the cross-bill admitted the allegations of ownership and channels of descent, and again Vera and her surviving husband were not mentioned. The amended bill of complaint was not filed until it was disclosed that Black possessed an existing substantial right in some of the land as the heir of his wife. It is therefore obvious from the pleadings that the complainants did not have knowledge of the material facts controlling their rights and interests, when, by urging the executors to either sell or not to sell, they made their first election to take under the provisions of the will. As soon as the four children, Elizabeth Pope, Marea Large, Nellie K. Anderson and Helen D. Balsley, became correctly informed as to their rights and interests, they immediately elected not to accept the provisions of the will. This is evidenced by the fact that Elizabeth Pope answered the cross-bill and filed her amended bill, and the other three changed from the role of defendants under the original bill to co-complainants in the amended bill and joined Elizabeth in answering the cross-bill. Under these circumstances the complainants were not bound by their election to take under the will, made in partial ignorance of material facts, and were free to assert their claims as owners of undivided interests in tracts 2 and 3. Their right to partition was therefore properly sustained by the chancellor.

As to the remaining question, appellees contend that the power given to the executors to sell the lands within two years after the testator's death and to divide the proceeds among his nine children was only a bare power of

sale. On the other hand, appellants assert that the rights and duties conferred upon the executors could be exercised only if they were clothed with title to the lands in fee simple. Collateral to this difference of opinion is the assertion by appellees that inasmuch as the alleged power of sale was not exercised within the time specified, the power lapsed and no further right existed in the executors to sell the land. In solving the question of whether a bare power of sale or a fee was given the entire will must be examined, for it is a matter of ascertaining the intention of the testator. (*Bender* v. *Bender*, 292 Ill. 358.) This examination discloses that the testator stressed the element of time in the settlement of his estate. Specifically he stated that his debts and the expenses of administration were to be paid with "reasonable diligence," while the executors were directed to convert the estate property into cash within the fixed period of two years. We must conclude that time was an essential element with the testator. The plain and unequivocal statement of the two-year limitation cannot be ignored, as it has the force of a mandate. There is an absence of language in the will which would vest in the executors any discretionary right to postpone the sale of the estate property to a time beyond the two years. Failure to sell the land in the vain hope that the market for real estate would improve was not warranted by anything in the will. In *Bleakly* v. *Bleakly*, 8 Atl. (Md.) 658, a power was conferred upon executors to sell land with no specified time set for making the sale. The land was sold immediately after the death of the testator and objections to the sale were not sustained, as the court held it to be the duty of the executors to sell the land in its present condition. In the case of *Vierieg* v. *Krehmke*, 293 Ill. 265, the executor was given power to sell the land at the best price obtainable, no specified time being set for the sale. Some of the heirs objected to making the sale unless a

certain price could be obtained, although there was a lack of specific agreement among all the heirs on this question. The testatrix died in January, 1917, and a partition suit was commenced by an heir in May, 1919. The executor excused his failure to make a sale because of lack of harmony among the heirs on the question, and further because the market was not favorable. The court said: "He was authorized to sell without the consent of the other tenants in common and we do not consider his excuse valid. Having failed to exercise the power given him within a reasonable time he has forfeited his right to exercise that power." In the present case the executors were only given a power of sale. The real estate was not devised to them, and when they failed to carry out the testator's positive direction to sell the land within two years they forfeited the right entirely. The distinction between a direction in a will to sell real estate and a devise of real estate to executors to sell is stated in Powell on Devises, p. 193, as follows: "In the one case a naked authority is given; in the other an authority coupled with an interest. In the former case the freehold remains with the heir until the sale by the executors; in the latter the freehold vests at once in the executors." It is manifest from a consideration of the whole instrument that it was the intention of the testator to confer only a power of sale upon his executors rather than the fee. Since this power was not exercised within the two-year period expressly fixed by the testator the power lapsed.

For the reasons given, the decree of the circuit court of Montgomery county is affirmed.          *Decree affirmed.*