# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

***In re Estate of Boyar*, 2013 IL 113655**

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* ESTATE OF ROBERT E. BOYAR (Robert A. Boyar, Appellant, v. Grant Dixon *et al.*, Appellees). |
| Docket No. | 113655 |
| Filed | April 4, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a decedent's son, who had been a trustee of his father's testamentary trust, filed a petition challenging the validity of a trust amendment executed a month before the demise and removing him in favor of, as sole trustee, a third person who, allegedly, had taken advantage of decedent's lack of mental capacity and exercised undue influence, the fact that the son had, pursuant to the terms of the trust, removed personal items from the family home did not constitute a choice or election barring the challenge to the amendment. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. James G. Riley, Judge, presiding. |
| Judgment | Judgments reversed.<br>Cause remanded. |

Counsel on
Appeal

Barry A. Feinberg, Daniel J. Fumagalli and David J. Feinberg, of Chuhak & Tecson, P.C., of Chicago, for appellant.

Kerry R. Peck, Timothy J. Ritchey and Jesse A. Footlik, of Peck Bloom, LLC, of Chicago, for appellee Grant Dixon.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, and Theis concurred in the judgment and opinion.

Justice Burke dissented, with opinion.

## OPINION

¶ 1        The questions we are asked to resolve in this appeal are: (1) whether the "doctrine of election" applicable to will contests should be extended to challenges to amendments to living trusts in cases where the trust serves the same purpose as a will, and (2) if so, whether the challenge to the trust amendment at issue in this case should nevertheless be permitted to proceed under one of the doctrine's exceptions. The circuit court held that the doctrine of election was applicable to the trust in this case and that because the trust beneficiary had accepted property belonging to the trust following the settlor's death, he was barred from contesting an amendment to the trust pertaining to removal of the trustee. The appellate court affirmed in a published opinion, agreeing that the doctrine should apply to trusts which serve the same function as wills and concluding that none of the exceptions to the doctrine applied here. 2012 IL App (1st) 111013. For the reasons that follow, we have determined that there was no need for the lower courts to address whether the doctrine of election should be extended to living trusts because that doctrine could not be invoked under the circumstances present here in any case. The judgments of the circuit and appellate courts are therefore reversed, and the cause is remanded to the circuit court for further proceedings.

¶ 2                                    BACKGROUND

¶ 3        Robert E. Boyar (Decedent) died testate on May 19, 2010. The following month, his will was admitted to probate and letters of office as independent administrator were issue to one of his sons, Robert A. Boyar (Robert).

¶ 4        Under the terms of Decedent's will, all of his property was to be distributed to a revocable living trust he had established in 1983 known as the Robert E. Boyar Trust. Decedent and his spouse, Patricia, were designated as trustees of that trust. Under the terms of the trust, the trust property was to be divided into two separate trusts in the event Patricia survived Decedent, the Marital Trust and the Family Trust. In the event Patricia did not

survive him, which is what ultimately happened, the trust was to be divided into separate shares upon his death and the shares were to be distributed to his heirs.

¶ 5    Decedent subsequently executed written restatements of the trust, one in 1997 and a second in 2000. Then, beginning in 2002, he amended the trust multiple times.

¶ 6    Article 15, section 2(c), of decedent's 2000 restatement of the trust provided that after the death or disability of both Decedent and Patricia, a trustee could be removed by a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from the trust. In the first of the amendments to the trust, Decedent provided that as to nonmarital trusts created under the trust instrument, Decedent's son Robert and The Northern Trust Company were to serve as cotrustees following his death. In four subsequent amendments to the trust, the designation of Robert and The Northern Trust Company as cotrustees remained unchanged.

¶ 7    Decedent assigned all of his tangible personal property to the trust in 2003. Patricia, his wife, died approximately two years later. When Decedent himself passed away in 2010, he was survived by five children, including Robert. Under the provisions of the trust, the trust property was to be divided so that each of the five children would receive one equal share, with one additional share to be divided among Decedent's grandchildren. The trust further provided that Decedent's children were to allocate any of his nonbusiness tangible personal property (jewelry, clothing, household items, and the like) among themselves "as they shall agree."

¶ 8    As noted earlier in this opinion, Decedent's will was admitted to probate and letters of office as independent administrator were issued to Robert within weeks of Decedent's death. In addition, and in accordance with the terms of the trust, Robert and his four siblings agreed on how to allocate Decedent's tangible personal property among themselves. They did so after meeting together on or about May 25, 2010, which was six days after Decedent's death, and again on July 16, 2010. Robert described his share as consisting of the following items: a stereo system, a card table set, art figurines from Decedent's living room, a coin collection, end tables from Decedent's living room and den, a television set, a DVD player and "a few videos," an army uniform, part of a china set, "securing of Decedent's fire arms," a Samurai sword, an Indian knife, a Persian knife, a fork set and miscellaneous family photographs.

¶ 9    Unknown to Robert and his siblings was that on April 27, 2010, less than a month before Decedent's death, a sixth and final amendment to the trust had been executed. The amendment left undisturbed the substantive provisions of the trust itself. It merely revoked former article 15 of the trust and replaced it with a new article 15 naming Decedent's friend and neighbor, a lawyer named G. Grant Dixon, to be his cotrustee while Decedent was living and then to be his successor trustee upon Decedent's death or at such time as Decedent ceased to act as trustee or cotrustee. Under this revision, Dixon was not subject to removal by a vote of the income beneficiaries.

¶ 10    Acting under the authority conferred by the sixth amendment, Dixon sent written notice to Robert that he considered all property within Decedent's home to belong to Decedent's trust and demanded that Robert provide him with "an itemization of any and all items removed from the home, including a complete description, name of person removing said

items, date of removal, current location, and approximate value." The notice and demand was dated August 10, 2010, and addressed to Robert's lawyer. Dixon faxed a follow-up demand to Robert's lawyer on September 2, 2010.

¶ 11    Approximately one week later, on September 10, 2010, Robert filed a petition in circuit court of Cook County challenging the validity of the amendment to the trust naming Dixon as trustee. The petition alleged that Decedent had been "unduly influenced to create [that amendment] at a time that he clearly lacked the mental capacity to create such a document." According to the petition, Decedent began suffering from dementia in 2005 and his mental capacity progressively worsened. During the last five years of his life, Decedent was dependent on others to manage his personal affairs, including paying bills, investing his assets, doing grocery shopping, and going to the doctor. Decedent's eyesight began to fail and he could not drive. Eventually, during the last three years of Decedent's life, one of his sons, Jeffrey, moved in with him to assist him.

¶ 12    Robert's petition further alleged that in early 2010, Decedent was admitted to the hospital because of congestive heart failure. His physical and mental health further deteriorated to the point where he was unable to return home. Instead, he was transferred to a nursing facility in La Grange Park known as Plymouth Place.

¶ 13    According to Robert's petition, Plymouth Place advised him in February of 2010 that Decedent was unable to make decisions for himself and that Robert would need to make all decisions for him. This was corroborated by Decedent's physicians in letters dated February 24, 2010, and March 3, 2010, which stated that "[d]ue to his significant dementia, [Decedent] is unable to make decisions regarding his personal and financial affairs and, thus, is considered disabled."

¶ 14    Robert alleged that the amendment to the trust instrument naming Dixon as sole trustee was executed by Decedent in April of 2010, just a month before Decedent's death and during a time when Plymouth Place was in the process of transferring him to the facility's Alzheimer's unit. Robert contended that the amendment was orchestrated by Dixon in order to permit Dixon to maintain control of the trust and allow Dixon to collect fees for doing so, that Decedent lacked the mental capacity to execute the sixth amendment, that Dixon came to occupy a position of trust in Decedent's life, and that Dixon violated that trust by taking advantage of Decedent's mental and physical disabilities for his own personal gain. The substantive provisions of the trust instrument itself were not questioned.

¶ 15    After Robert filed his petition challenging the validity of the amendment naming Dixon as trustee, Dixon, purporting to act in his capacity as trustee, filed a petition pursuant to the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2010)) requesting issuance of a citation directed at Robert, individually and as administrator of Decedent's estate, to discover and recover assets. As grounds for that petition, Dixon asserted, on information and belief, that Robert had "impermissibly removed personal property located in the Decedent's primary residency without [Dixon's] authorization."[1]

_____

[1]Dixon's petition invoked both section 16-1 of the Probate Act (755 ILCS 5/16-1 (West 2010)) and section 16-2 of the Act (755 ILCS 5/16-2 (West 2010)). Section 16-1 authorizes petitions

¶ 16    Eight days after Dixon petitioned for a citation to discover assets, Robert filed an emergency motion for leave to remove personal property from Decedent's home prior to the home's sale. In that motion, Robert advised the court regarding how he and his siblings had divided up Decedent's tangible personal property in accordance with the terms of the trust, but that additional items with an appraised value of $1,560 remained in the home and needed to be removed to prepare the home for its impending sale. The circuit court granted the motion. In so doing, it ruled that any personal property left on the premises after Robert and his siblings had taken the items they wanted could be removed from the home and disposed of by a company known as Estate Services, Inc., and that Estate Services, Inc., could be paid $1,250 for their services.

¶ 17    Robert subsequently filed a written response to Dixon's petition for a citation to discover assets. The response described in detail how, when and under what authority Decedent's children had divided Decedent's personal property. The response also included, as an exhibit, an itemized receipt listing the specific items Robert had taken as his share of his father's personal property.

¶ 18    While the citation to discover assets was pending, Dixon filed a combined motion pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)) challenging the petition filed by Robert to contest the validity of the sixth amendment to Decedent's trust naming Dixon as trustee. In that motion, Dixon argued that Robert's petition should be dismissed under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)) on the grounds that under the "doctrine of election," "once a beneficiary under a will has accepted a benefit granted by the will, he will be estopped from asserting any claim contrary to the validity of the will." Dixon further argued that Robert's petition had failed to properly state claims for breach of fiduciary duty and undue influence and that those claims should be dismissed on the pleadings pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)).

¶ 19    In response to Dixon's combined motion, Robert argued that no Illinois case law supported application of the "doctrine of election" to cases such as this one involving a trust rather than a will, and that even if the doctrine were applicable to trust contests, it should not be applied here. Robert contended that the purpose of the doctrine is to prevent a person from taking inconsistent positions with respect to the requested relief and that his challenge to the

_____

for citations to be brought on behalf of the estate by the representative of the estate or any person interested in the estate where there is an issue as to property owned by a decedent or the decedent's estate or representatives. Dixon has no authority over or interest in Decedent's estate in any capacity, and the subject personal property was not part of the estate, having been transferred by Decedent to the trust years before he died. Section 16-1 would therefore appear to be inapplicable. As for section 16-2, it authorizes third parties to seek judicial intervention to order a representative of the estate to hand over property which the third party claims to own. Although that appears to be what Dixon is attempting to accomplish through his citation petition, the issue of whether section 16-2 is the proper vehicle for Dixon's efforts to recover the items of personal property from Robert is not necessary to resolution of this appeal. Accordingly, our decision today should not be construed as expressing any view on the merits of Dixon's petition or his right to bring it.

trustee provision in the sixth amendment to the trust was in no way inconsistent with his receipt of items of personal property under the trust's substantive provisions. Robert further argued that there was ample basis for his claims of breach of fiduciary duty and undue influence.

¶ 20      Dixon filed a reply to Robert's response, arguing, among other things, that Robert had erroneously confused the doctrine of election of remedies with the equitable doctrine of election and that under the equitable doctrine of election, one must accept an instrument in its entirety or not at all. Dixon further argued that Robert should not be permitted to escape the effect of the doctrine on the grounds that his challenge to the trustee provisions of the sixth amendment does not constitute a challenge to the trust itself. Borrowing principles applicable to wills and codicils, Dixon asserted that both the sixth amendment and the trust must be considered as one so that an attack on the amendment is tantamount to an attack on the trust itself.

¶ 21      Following a hearing, the circuit court concluded that Dixon's challenge to Robert's petition was meritorious. It granted Dixon's motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)) and dismissed, with prejudice, Robert's petition to contest the validity of the sixth amendment to the trust. After Robert's motion to reconsider was denied, he filed a timely notice of appeal.

¶ 22      The appellate court affirmed. 2012 IL App (1st) 111013. It agreed with Dixon that the doctrine of election should apply to trusts where, as here, the trust "was used to achieve the effect of testation." *Id.* ¶ 35. It further opined that the courts of Illinois have recognized only two exceptions to the doctrine: (1) where acceptance of a benefit under a provision of the testamentary document was not made with full knowledge of the relevant facts and circumstances, including the contents of that document and the circumstances surrounding its execution, and (2) where the provision of the document being challenged is contrary to the law or public policy. *Id.* ¶ 40. In the appellate court's view, neither of these exceptions was applicable here. It observed that Robert had made no claim regarding the second of the exceptions (*id.* ¶ 41) and held that he could not avail himself of the first because he had full knowledge of the circumstances surrounding execution of the sixth amendment to the trust (*id.* ¶ 42) and "the record directly rebuts [his] assertion that he was not fully aware of the facts and circumstances of the trust provisions at the time he took personal property from the trust, so as to make an informed election." *Id.* ¶ 43.

¶ 23      The appellate court went on to acknowledge that a third exception to the doctrine of election has been recognized in other jurisdictions under which a beneficiary will be permitted to challenge the validity of the will if he timely tenders or repays the benefits received under the will and the estate is not prejudiced by his temporary acceptance of those benefits. The court noted, however, that Illinois courts have qualified this exception by requiring the return of or an offer to repay a legacy *prior* to instituting the contest proceeding, and that the third exception could not be invoked "where the beneficiaries challenging the will did not return or, in the very least, offer to return the property at the time the will contest was filed or within a reasonable time thereafter." *Id.* ¶ 48. In the appellate court's view, Robert's offer to return his share of the personal items taken from Decedent's home did not

-6-

qualify under this exception because the offer came too late. *Id.* ¶¶ 49-50.

¶ 24 Finally, the appellate court rejected Robert's argument that the sixth amendment to the trust was severable and that his attack on that amendment should not be construed as a challenge to the trust as a whole. The appellate court held that Robert had not properly preserved that argument and that, in any case, it would still fail under the doctrine of election because under Illinois law, the amendment had to be considered part and parcel of the trust document itself and was therefore not subject to challenge once Robert had accepted items from the trust pursuant to its substantive provisions. *Id.* ¶¶ 51-54. The appellate court went on to hold, however, that nothing in its ruling precluded Robert from initiating a separate action in the circuit court asking for removal of Dixon as trustee. *Id.* ¶ 56.

¶ 25 After the appellate court entered its judgment affirming the dismissal, with prejudice, of Robert's challenge to the sixth amendment to Decedent's trust, Robert petitioned this court for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), which we allowed.

¶ 26 ANALYSIS

¶ 27 As noted above, dismissal of Robert's challenge to the trust's sixth amendment was predicated on section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2010)). A motion to dismiss under section 2-619(a) admits the legal sufficiency of the plaintiff's complaint, but asserts that the claim asserted against the defendant is barred by some affirmative matter which avoids the legal effect of or defeats the claim. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15; 735 ILCS 5/2-619(a)(9) (West 2010). The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. When reviewing a judgment dismissing a claim under the statute, we afford no deference to the determinations by the lower courts. Section 2-619 motions present a question of law, and our review is *de novo*. *Doe v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009).

¶ 28 In the case before us, dismissal of Robert's challenge to the sixth amendment to the trust was based solely on the "doctrine of election." That doctrine, as applied to wills, is not a creature of the common law but was imported into equity from civil law. *Carper v. Crowl*, 149 Ill. 465, 474-75 (1894). Though its origins are ancient, it has fallen out of favor in modern times as its purposes and application have been reevaluated and criticized. See *Estate of Williamson v. Williamson*, 275 Ill. App. 3d 999, 1004 (1995). So little used is the doctrine today that our own court has had no occasion to consider it since our decision in *Remillard v. Remillard*, 6 Ill. 2d 567 (1955), more than 50 years ago. Properly understood, the doctrine of election is triggered in the context of wills only when there are two different benefits to which a person is entitled, the testator did not intend the beneficiary to take both benefits, and allowing the beneficiary to claim both would be inequitable to others having claims upon the same property or fund. As this court made clear long ago, it is " 'indispensable to the application of the doctrine of election, that there be, first, a plurality of gifts or two inconsistent or alternative rights or claims in property devised, the choice of one by the devisee being intended to exclude him from the benefit of the other; and second, in case the property of the devisee is disposed of by the will and he chooses to assert his right to such

-7-

property against the will, that there be a fund for his benefit given by the will, which can be laid hold of to compensate the parties whose right to take under the will is defeated by the election.' " *Bell v. Nye*, 255 Ill. 283, 285-86 (1912) (quoting *Carper v. Crowl*, 149 Ill. at 477-78); see also *Luepker v. Rieso*, 119 Ill. App. 3d 62, 66 (1983).

¶ 29　　In practice, this means, for example, that "if a testator intending to dispose of his property, includes in the disposition, property of another person, and at the same time gives to such other person an interest in the estate of the testator, such person will not be permitted to defeat the disposition made by the will and at the same time take under it. He is put to his election whether he will retain his own property or take the benefit conferred by the will. [Citations.]" *Carper v. Crowl*, 149 Ill. at 476. Similarly, where a devisee or legatee takes something under the will to which he would not be otherwise entitled, the doctrine of election prohibits that person from also seeking to hold property disposed of by the will to which he would be entitled if there had been no will. *Schuknecht v. Schultz*, 212 Ill. 43, 48-49 (1904).

¶ 30　　That the doctrine of election presupposes the existence of two inconsistent or alternative claims to property devised by the testator is apparent throughout this court's precedent. See *Remillard v. Remillard*, 6 Ill. 2d 567 (1955); *Lloyd v. Treasurer of the State*, 401 Ill. 520, 525-26 (1948) ("[e]lection under a will consists in the exercise of a choice offered a devisee or legatee of either accepting its benefits and surrendering some claim, right or property which the will undertakes to dispose of, or of retaining his claim, right or property, and rejecting the provisions made for him by the will"); *Oglesby v. Springfield Marine Bank*, 395 Ill. 37, 45 (1946) (same); *Ness v. Lunde*, 394 Ill. 286, 294 (1946) (same); *Tilton v. Tilton*, 382 Ill. 426, 432 (1943); *Schlimme v. Schlimme*, 364 Ill. 303, 305 (1936); *Pope v. Kitchell*, 354 Ill. 248 (1933); *Burns v. First National Bank of Joliet*, 304 Ill. 292 (1922); *Elmore v. Carter*, 289 Ill. 560 (1919); *Palenske v. Palenske*, 281 Ill. 574 (1917); *Koelling v. Foster*, 254 Ill. 494 (1912); *Richardson v. Trubey*, 250 Ill. 577 (1911); *Bell v. Nye*, 255 Ill. 283; *Schuknecht v. Schultz*, 212 Ill. at 49; *Friederich v. Wombacher*, 204 Ill. 72 (1903); *Kidder v. Douglas*, 194 Ill. 388 (1902); *Buchanan v. McLennan*, 192 Ill. 480 (1901); *Van Schaack v. Leonard*, 164 Ill. 602 (1897); *Fry v. Morrison*, 159 Ill. 244 (1896); *Carper v. Crowl*, 149 Ill. 465; *Gorham v. Dodge*, 122 Ill. 528 (1887); *Ditch v. Sennott*, 117 Ill. 362 (1886); *Woolley v. Schrader*, 116 Ill. 29 (1886); *Lessley v. Lessley*, 44 Ill. 527 (1867); *Brown v. Pitney*, 39 Ill. 468 (1866); *Wilbanks v. Wilbanks*, 18 Ill. 17 (1856). Dixon has not cited and we have not found a single decision by our court involving the doctrine of election which did not involve the choice faced by a devisee or legatee of either accepting benefits under a will and surrendering some claim, right or property which the will undertook to dispose of, or else retaining such a claim, right or property, and rejecting the provisions made for the devisee or legatee by the will.

¶ 31　　When a person is presented with the choice between two inconsistent or alternative claims to property devised by the testator and elects to accept benefits pursuant to the provisions of the will, that person will then normally be estopped from challenging the will or any part of it, for

> "he who would accept the bounty of another must do so upon such terms and conditions as the donor may choose to impose. The beneficiary under a will cannot insist that the provisions in his favor shall be executed and those to his prejudice

annulled. He must accept the instrument in its entirety or not at all." *Brown v. Pitney*, 39 Ill. 468, 472 (1866).

Equity demands this for two basic reasons. The first is to honor the testator's intent. See *Carper v. Crowl*, 149 Ill. at 476 ("[f]or, if the donee be permitted to accept the benefit and at the same time decline the burden, it is to defraud and defeat the intent and design of the donor"). The second is to protect the equitable rights of all the others who stand to benefit under the will. See *Lloyd v. Treasurer of the State*, 401 Ill. at 526; *Buchanan v. McLennan*, 192 Ill. at 485.

¶ 32 Finally, Illinois precedent makes clear that the doctrine of election is not absolute. See *In re Estate of Joffe*, 143 Ill. App. 3d 438, 441 (1986). Acceptance of a benefit under a will does not preclude a person from contending that the will contravenes law or public policy. *Chaney v. Baker*, 302 Ill. 481 (1922); *Elmore v. Carter*, 289 Ill. at 562. Moreover, if a person makes an election without full knowledge of the material facts, including knowledge of the contents of the will and the circumstances of its execution, the election will not prevent a subsequent assertion of rights after the person becomes cognizant of those facts. *Wilbanks v. Wilbanks*, 18 Ill. at 22; *In re Estate of King*, 245 Ill. App. 3d 1088, 1099 (1993).

¶ 33 As set forth earlier in this opinion, the appellate court in this case concluded that the doctrine of election was not limited to will contests but could be extended to challenges to trusts, at least where the trust is "used to achieve the effect of testation" (2012 IL App (1st) 111013, ¶ 35), that the doctrine was triggered in this case by Robert's acceptance of a share of Decedent's personal items, and that the exceptions to the doctrine of election were inapplicable. It therefore found that the doctrine barred Robert's challenge to the sixth amendment to Decedent's trust.

¶ 34 Robert's appeal in our court centers on the contention that the doctrine of election should not be applied generally to trusts, and that, in any case, it should not be applied to a mere amendment to a trust especially where, as here, the amendment pertains solely to a matter of trust administration and its validity has no bearing on the trust's substantive provisions. Existing Illinois case law offers little guidance on these questions. Indeed, it is nearly silent on the issue of whether and under what circumstances the doctrine of election should operate to bar a challenge to provisions of a trust.

¶ 35 In *Burnet v. First National Bank of Chicago*, 12 Ill. App. 2d 514 (1957), a panel of our appellate court invoked decisions by this court involving the doctrine, as applied to wills, as a basis for affirming the dismissal of a complaint challenging the validity of two living trusts. It did so, however, without explanation or analysis. It merely adopted the principles from our precedent involving wills in crafting its decision. So far as we can tell, our own court has never spoken to the question at all. As noted earlier in this opinion, we have not even discussed the doctrine of election in connection with a will contest for over half a century. The page is essentially blank.

¶ 36 For today, at least, it shall remain so. Established principles of judicial review counsel against consideration of issues which are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided. *Barth v. Reagan*, 139 Ill. 2d 399, 421 (1990); *Condon v. American Telephone & Telegraph Co.*, 136

Ill. 2d 95, 99 (1990). This is such a case. Even if we were to agree with the appellate court that the doctrine of election should be extended to living trusts, at least where the trust served the same purpose as a will, the appellate court's judgment could not be sustained. That is so because elements necessary for application of the doctrine are absent in this case.

¶ 37     As our discussion of the doctrine has explained, "[e]lection under a will consists in the exercise of a choice offered a devisee or legatee of either accepting its benefits and surrendering some claim, right or property which the will undertakes to dispose of, or of retaining his claim, right or property, and rejecting the provisions made for him by the will." *Lloyd v. Treasurer of State*, 401 Ill. at 525-26. Accordingly, it is "indispensable to the application of the doctrine of election, that there be *** a plurality of gifts or two inconsistent or alternative rights or claims in property devised, the choice of one by the devisee being intended to exclude him from the benefit of the other." *Bell v. Nye*, 255 Ill. at 285-86.

¶ 38     In this case, Robert was never presented with a choice between any such plurality of gifts or inconsistent or alternative rights or claims to property conferred by the trust. There was no issue of taking his property pursuant to the terms of the trust or else asserting a claim to trust property based on a right which existed independent of the trust's provisions. Without such a choice, without the existence of inconsistent claims to trust property, one founded on the trust document and the other predicated on some right existing independent of the document, there was simply no "election" for Robert to make.

¶ 39     What Robert did in this case was share with his siblings their father's personal possessions as the trust provided. Merely accepting property, where there is no plurality of gifts or alternative claim to property independent of the donative instrument, has never been found by this court to constitute as an "election" under the doctrine of election. We further note, as we did earlier in this opinion, that the doctrine of election is designed to: (1) prevent the beneficiary from defrauding and defeating the donor's intent and design for disposition of his or her property, and (2) protect the equitable rights of all the others who stand to benefit under the will. Those concerns are not present here. Allowing Robert to challenge the sixth amendment to the trust, which pertains solely to appointment of the trustee, while retaining a share of the Decedent's personal effects as provided by the trust, will not upset the property disposition contemplated by Decedent or compromise the rights of anyone else who stands to take under the provisions of the trust. That is so because the challenged amendment is wholly unrelated to the substantive provisions governing disposition of Decedent's property. Whether the challenge is successful or not, the property disposition will remain the same. The doctrine of election would therefore be inapplicable here even if it did extend to trusts like the one created by the Decedent in this case.

¶ 40     Finally, we note that, separate and apart from the doctrine of election, there is a general principle of equity which holds that once one accepts some benefit, one cannot then challenge the validity of the thing by which the benefit was conferred. This principle has been applied in a variety of contexts, including challenges to divorce decrees (see *In re Marriage of Monken*, 255 Ill. App. 3d 1044, 1047 (1994)) and other judgments (see *Fahey v. Town of the City of Bloomington*, 266 Ill. 501, 503 (1915)), contract disputes (*Kadish v. Garden City Equitable Loan & Building Ass'n*, 151 Ill. 531, 538 (1894); *Cashman v. Shinn*,

-10-

109 Ill. App. 3d 1112, 1117 (1982)) and statutory challenges (see *Isenstein v. Rosewell*, 106 Ill. 2d 301, 307 (1985)). It is based on principles of logic, fairness and consistency which are self-evident: Unless you acknowledge that a decree, statute, contract, etc., is valid, then by what right can you claim the benefit you accepted under its terms?

¶ 41 Although there is some conceptual overlap between this concept and the inquiry applied under the election doctrine in instances where a beneficiary has elected to assert a claim to estate property under the will rather than outside it, the principles are not identical. There is, however, no need to discuss the point further. For purposes of this appeal, it is sufficient to say that the more general equitable principle is of no use to Dixon either. That is so because the considerations underlying that principle are simply not at play. Robert is not attempting to accept a benefit while at the same time challenging the validity of the provisions by which the benefit was conferred. As we have explained, Robert's complaint is not directed toward any of the substantive dispositions made by Decedent through his trust or Decedent's competence when those provisions were drafted. Robert accepts the validity of those provisions fully and without reservation. His challenge is limited to the separate question of the appointment of Dixon as trustee pursuant to the sixth amendment to Decedent's trust. There is nothing whatever in the terms of the trust itself to suggest that identity of the trustee was in any way relevant to Decedent's plans for division of this personal property by Robert and his other children. Again, regardless of the identity of the trustee, the substantive terms of the trust and the disposition of trust property would be unchanged. Accordingly, because Robert's right to share in Decedent's personal effects in no way depends on his acknowledgment of the validity of the amendment purporting to give Dixon the right serve as trustee, Robert's acceptance of a share of Decedent's personal effects does not act as a bar to his challenge to that amendment.

¶ 42 CONCLUSION

¶ 43 For the foregoing reasons, the circuit court erred when it granted Dixon's motion to dismiss Robert's challenge to the sixth amendment to Decedent's trust, and its judgment should not have been affirmed by the appellate court. The judgments of the circuit and appellate courts are therefore reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 44 Judgments reversed.

¶ 45 Cause remanded.

¶ 46 JUSTICE BURKE, dissenting:

¶ 47 The primary issue raised in Robert's petition for leave to appeal in this case was whether the "doctrine of election" should be applied to trusts. Robert pointed out in his petition that application of the doctrine of election to trusts "is an issue of first impression in Illinois" and, for this reason, argued that the appellate court's decision applying the doctrine merited this court's review. We granted Robert's petition for leave to appeal.

¶ 48     The majority acknowledges that "[e]xisting Illinois case law offers little guidance" on whether the doctrine of election should operate to bar a challenge to provisions of a trust and, indeed, that the law "is nearly silent on the issue." *Supra* ¶ 34. However, despite the fact that we granted Robert's petition for leave to appeal specifically to consider the issue, the majority concludes that it "shall remain" unaddressed. *Supra* ¶ 36. The majority explains it decision, stating:

> "Established principles of judicial review counsel against consideration of issues which are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided. *Barth v. Reagan*, 139 Ill. 2d 399, 421 (1990); *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99 (1990). This is such a case. Even if we were to agree with the appellate court that the doctrine of election should be extended to living trusts, at least where the trust served the same purpose as a will, the appellate court's judgment could not be sustained. That is so because elements necessary for application of the doctrine are absent in this case." *Supra* ¶ 36.

¶ 49     I disagree with the majority's decision to avoid addressing whether the doctrine of election applies to trusts. The majority's justification for avoiding the issue is, essentially, that it is the prudent, judicious thing to do. But this court's experience in *In re K.E.F.*, 235 Ill. 2d 530, 541 (2009), a case much like this one, belies that notion.

¶ 50     In *K.E.F.*, this court granted leave to appeal to address the legal issue of whether the State may file an interlocutory appeal from an order suppressing evidence in a juvenile delinquency proceeding. *K.E.F.*, 235 Ill. 2d at 532. However, the court skipped over the issue, concluding that, because the contested order did not suppress evidence within the meaning of Supreme Court Rule 604(a)(1) (Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006)), there was no need to decide whether the State could file the appeal in the first place. *K.E.F.*, 235 Ill. 2d at 541.

¶ 51     Thereafter, in May of 2012, this court granted leave to appeal in *In re* B.C.P., No. 113908. That case is currently pending before this court and the issue presented is identical to the one raised in *K.E.F.*—whether the State may file an interlocutory appeal from an order suppressing evidence in a juvenile delinquency proceeding. Thus, by not addressing whether the State could file an interlocutory appeal in *K.E.F.*, the issue has remained unresolved for over three years and this court is now forced to devote additional resources to decide a second case when the issue should have been resolved in the first. The same is true here. By not addressing whether the doctrine of election applies to trusts, the court merely perpetuates uncertainty in the law and delays the ultimate resolution of the issue. It is not an efficient use of judicial resources and it is by no means a prudent or judicious course of action.

¶ 52     I dissented in *K.E.F.* and have dissented in other similar cases where this court granted a petition for leave to appeal in order to address an important legal question and then avoided reaching that very question in the opinion. See *In re K.E.F.*, 235 Ill. 2d at 541-43 (Burke, J., dissenting, joined by Freeman, J.); *People v. Evans*, 2013 IL 113471, ¶¶ 22-27 (Burke, J., dissenting); *Cooney v. Rossiter*, 2012 IL 113227, ¶¶ 42-46 (Burke, J., specially concurring, joined by Freeman and Theis, JJ.); *People v. White*, 2011 IL 109689, ¶¶ 156-82 (Burke, J.,

dissenting, joined by Freeman, J.). Underlying these dissents is my concern that this court, on occasion, loses sight of its role in the judicial system and, in issuing opinions that avoid addressing the legal question at issue, functions more like the appellate court.

¶ 53　　The appellate court's docket is largely mandatory, with the court playing very little role in the cases that come before it. The appellate court's primary function is error correction, *i.e.*, to determine whether any prejudicial errors occurred in the circuit court and, if so, to correct them. In that context, a policy of deciding cases on the narrowest, factual grounds available makes sense.

¶ 54　　But this court's role is different. This court is not, primarily, a court of error correction. As Chief Justice Taft put it in explaining the role of the United States Supreme Court in the federal judicial system:

> "The function of the Supreme Court is conceived to be, not the remedying of a particular litigant's wrong, but the consideration of cases whose decision involves principles, the application of which are of wide public or governmental interest, and which should be authoritatively declared by the final court." William Howard Taft, *The Jurisdiction of the Supreme Court Under the Act of February 13, 1925*, 35 Yale L.J. 1, 2 (1925).

See also Ill. S. Ct. R. 315(a), Committee Comments (revised Apr. 27, 1984) (noting that our Rule 315 is modeled after the *certiorari* procedure in the United States Supreme Court).

¶ 55　　Our docket is almost exclusively discretionary. We are not assigned cases; we select them. And we make that choice based on a conclusion that a legal issue raised in a case is of sufficient "general importance" (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)) to merit review. In this context, a policy of not deciding the legal issue presented, and of trying to limit our decision to the narrowest factual grounds, is both illogical and undermines the role this court plays in the judicial system.

¶ 56　　To be sure, there are times when an important legal issue cannot be reached after a petition for leave to appeal has been granted, as when a case becomes moot while on appeal, or when the court becomes deadlocked. But, in my view, there is a fundamental contradiction, both in simple logic and with the function of this court, in granting a petition for leave to appeal in order to address an issue of public importance and then, for no legal reason, simply choosing to ignore it.

¶ 57　　Consider this appeal. The issue which the majority decides is the purely factual one of whether the elements of the doctrine of election are present in this case. That question is of obvious importance to the parties, but it is not a matter of public or general importance under Supreme Court Rule 315(a). Why address an issue which is limited to the facts of this case when the issue of broader public importance—the very issue that justified review under Rule 315(a) in the first place—goes unanswered?

¶ 58　　The legal issue of whether the doctrine of election applies to trusts was important enough for this court to grant Robert's petition for leave to appeal. The issue could be, and should be, addressed by the court. Because the majority does not do so, I cannot join in its opinion. Accordingly, I must respectfully dissent.