2018 IL App (2d) 170949
No. 2-17-0949
Opinion filed August 23, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MICHAEL L. CLELAND, BRUCE C. CLELAND, BARBARA A. MASSIER, and STEVEN M. CLELAND, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 15-L-28 |
| | ) | |
| JOHN E. CLELAND, DIANE D. CLELAND, and JERRY W. CLELAND, | ) ) | Honorable |
| | ) | John H. Young, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    This is an appeal from the circuit court's grant of defendants' section 2-619 (735 ILCS 5/2-619 (West 2014)) motion to dismiss counts I and II of plaintiffs' complaint. Plaintiffs, Michael L. Cleland, Bruce C. Cleland, Barbara A. Massier, and Steven M. Cleland, are siblings of defendants John E. Cleland and Jerry W. Cleland. Defendant Diane D. Cleland is John's wife.

¶ 2    William Cleland and Louise Cleland were the siblings' parents, and they were married until William's death in 2012. Louise died in 2015. Both William and Louise executed trusts, and the six siblings were beneficiaries of their trusts. Plaintiffs' complaint arose from a dispute over their parents' 2012 trust restatements. In particular, count I sought damages for tortious

interference with inheritance expectancy, and count II sought rescission of the 2012 restatements based on William's alleged lack of capacity.

¶ 3     We reverse and remand.[1]

¶ 4                                 I. BACKGROUND

¶ 5     William and Louise were married until William's death on May 11, 2012. Louise died less than three years later on January 13, 2015. Both William and Louise executed individual trust agreements in 1992 (1992 trusts or original trusts), amended in 1997, and their wills provided that the contents of their estates were to pour over into their trusts. William and Louise restated their trusts on January 28, 2012 (2012 restatements). All six siblings were beneficiaries of all the trusts, and John and Jerry were the trustees of the 2012 restatements.

¶ 6     The 1992 trusts provided that John could purchase real estate from the trusts within two years of the death of William or Louise, whoever died last, at the property's appraised value. John could defer the purchase price for up to five years from the date of purchase. The 1997 amendments amended the purchase price for John's right to buy real estate to 80% of its appraised value.

¶ 7     The 2012 restatements provided in relevant part that, if there were no surviving spouse, John would receive a specified 40-acre tract of farmland. The remaining farmland would be held by the trusts for seven years, during which time John had the first option to rent all or part of the farmland. If he rented it, it would be rented on a 50/50 crop share basis between him and the

---

[1] In addition, we took two motions with this case: plaintiffs' motion to strike defendants' nature of the case and statement of facts, and defendants' motion to strike portions of plaintiffs' reply brief. We deny the motions to strike, but we will ignore any portions of the briefs that do not conform to our rules.

trusts. He also had the first option to buy all or part of the farmland, for 70% of its appraised fair market value. John further had an option to defer the purchase price, allowing him to pay over 10 years. The remaining balance of the estate was to be allocated in shares of equal value to all the surviving children.

¶ 8 The record contains correspondence between the parties and their representatives. On March 14, 2015, John and Jerry e-mailed plaintiffs, writing that William and Louise had individual trusts with identical language and that John and Jerry were the cotrustees of the trusts. Their e-mail continued that the "major asset" was the farmland and that William and Louise wanted to make sure that John had the option to live on the farm and continue farming. Their e-mail also noted that William and Louise had some investments and insurance policies, and they estimated that each sibling would eventually get about $30,000 from the estate.

¶ 9 On March 17, 2015, at the request of John and Jerry, attorney Lois Ramon mailed a letter to all six siblings regarding their parents' trusts. She enclosed a copy of Louise's current trust agreement. She believed that some life insurance and retirement accounts would be distributed upon receipt. The "major asset in both trusts [was] the farmland." She stated that John had been given a specific bequest of a 40-acre tract of farmland and also the first option to rent the remaining farmland. She continued that John had the first option for seven years to purchase any or all of the farmland, at 70% of its fair market value, and that he could defer payment for up to 10 years. She wrote that "[o]bviously your parents were concerned about John being able to continue to farm subsequent to their deaths and giving him a financial basis that would be fair to him." Any remaining assets were to be divided equally among the siblings, but the trusts would retain sufficient funds to pay expenses, including funeral expenses, trust administration expenses, and farm expenses.

¶ 10    The parties held a family meeting to discuss their parents' estates on April 2, 2015, but plaintiffs averred that they did not receive answers to their questions at the meeting.  On or around April 21, 2015,[2] a monetary distribution of $31,200.71 was made by check to each of the six siblings.

¶ 11    On May 29, 2015, plaintiffs received a letter from David O'Brien, who had done accounting work for the family.  His letter enclosed a copy of the check registers for both William's and Louise's trusts from the beginning of 2015.  The 2015 check register for Louise's trust showed six outgoing checks of $31,200.71, one for each of the six siblings.  A tax document for Louise's trust labeled those checks as trust disbursements.  The 2015 check register for William's trust showed no outgoing checks to plaintiffs and no check in the amount of $31,200.71.  In conjunction with plaintiffs' motion for discovery in November 2015, both Michael and Steven averred that they had never received an accounting of William's or Louise's trust prior to the May 29 letter.

¶ 12    Plaintiffs filed a three-count complaint on July 29, 2015.  Count I was for tortious interference with inheritance expectancy, alleging that John and Diane procured the 2012 restatements by undue influence; count II was for rescission of the 2012 restatements, based on William's alleged lack of capacity; and count III was for John and Jerry's breach of fiduciary duty.  Count III is not at issue on this appeal.

¶ 13    Count I alleged in relevant part as follows.  Louise was diagnosed with lymphoma in 2010, and she was further diagnosed with brain cancer by the spring of 2014.  She underwent chemotherapy treatment in 2010 and 2011, and she experienced "chemo brain," affecting her

---

[2] The memo accompanying the checks was dated April 21, 2015, but the withdrawals from Louise's trust account were dated April 19.

thought processes. William was diagnosed with Parkinson's disease in 2000 and dementia around 2008, and taking care of William caused Louise mental and physical fatigue. In October 2011, Louise transferred about $9000 in four separate transactions to unknown individuals in other countries, falling for a scam that her grandson was in jail and needed money. John and Diane lived next door to Louise on Louise and William's 40-acre tract of land, and Louise came to rely on their care. John and Diane contacted Ramon in October 2011 to draft revised estate documents, which Louise and William signed in 2012. On plaintiffs' information and belief, John and Diane intentionally influenced Louise and William to revise their testamentary provisions to their benefit and to the detriment of the other siblings. Absent their undue influence, William and Louise would not have executed restated trusts in 2012.

¶ 14 Count II realleged the allegations of count I and also alleged that William had lacked the capacity to execute a restated trust, because of his dementia and other physical ailments.

¶ 15 Defendants filed a combined sections 2-615 and 2-619 (*id.* §§ 2-615, 2-619) motion to dismiss on September 21, 2015, pursuant to section 2-619.1 (*id.* § 2-619.1). In their section 2-619 motion to dismiss, they argued, in relevant part, that counts I and II were (1) barred by the doctrine of election and (2) barred by equitable estoppel. Defendants first argued that, under the doctrine of election, any person who voluntarily accepts a distribution under a will or trust is held to ratify and confirm the will or trust. They continued that plaintiffs accepted benefits from the 2012 restatements, in the form of personal property and monetary distributions of $31,200.71, and that their acceptances triggered the doctrine of election, barring both counts. Defendants next argued that counts I and II were barred by equitable estoppel for similar reasons. That is, they argued that plaintiffs had accepted benefits from the 2012 restatements, with

knowledge of the trusts' terms, and that they were therefore estopped from challenging those trusts.

¶ 16    Defendants' section 2-615 motion to dismiss argued that count I failed to meet pleading standards for undue influence by providing conclusory allegations instead of specific facts.  For count II, defendants' section 2-615 motion argued that plaintiffs identified the wrong standard for testamentary capacity and that they sought the wrong remedy when they requested damages in addition to rescission.

¶ 17    Plaintiffs responded to the motion to dismiss on December 16, 2016, arguing that the doctrine of election did not apply.  First, they argued that the doctrine of election did not apply to trusts.  Moreover, they argued, even if the doctrine of election applied to trusts, an election required either (1) accepting benefits from the trust and at the same time surrendering some right, claim, or property or (2) retaining the right, claim, or property and rejecting the benefits under the trust.  Because defendants had not identified any election between two different benefits, the doctrine of election was inapplicable.

¶ 18    Plaintiffs also argued that equitable estoppel was inapplicable because a person may question the validity of a will's provisions, even though that person accepted benefits under the will, if (1) the person lacked full knowledge of relevant facts or (2) the will's provisions are contrary to law or public policy.  Plaintiffs did not dispute that they received checks in the amount of $31,200.71 and some personal property from Louise's home, but they asserted that they did not have full knowledge of the relevant facts and circumstances of the distributions from the trusts.  They argued, in relevant part, that prior to distributing the checks, John and Jerry never disclosed that they were withholding $200,000, never disclosed the distribution of over 640 acres of real estate, and never provided an accounting as to the extent of monies in William's

and Louise's trusts. Plaintiffs argued that John and Jerry's representations were false and intended to induce acceptance of the payments. Furthermore, they argued that the benefits they accepted did not depend on the 2012 restatements and that they would have received those same benefits under prior versions of the trusts.

¶ 19 The circuit court orally read its findings on defendants' combined motion to dismiss into the record on March 24, 2017. The first issue was whether the doctrine of election applied to the trusts in this case. The court began by finding that the estate-planning documents, and specifically the trust restatements, were will substitutes. It stated that William and Louise had pour-over wills and that their estates went into trusts that were intended to distribute their assets upon their deaths. It agreed with defendants that the doctrine was applicable to trusts.

¶ 20 The circuit court then explained the doctrine of election as follows:

"[O]ne cannot simultaneously accept benefits conferred by a will while setting up claims contrary to the terms of the document itself. One accepts or rejects the instrument in its entirety and cannot pick and choose those clauses when [*sic*] finds most advantageous. Therefore, once a beneficiary has accepted a benefit granted by the will, he will be estopped from asserting any claim contrary to the validity of the will."

The court continued that the doctrine was not absolute, but that exceptions to the doctrine did not apply in this case.

¶ 21 The court further found that the monetary distributions came from both trusts and that plaintiffs never returned or offered to return the distributions prior to filing their complaint. The court based its finding that the money came from both trusts on Jerry's affidavit and answer to interrogatories. It also summarily rejected the argument that any commingling of funds between

William's and Louise's trusts caused those funds to lose their individual identities. Therefore, it dismissed counts I and II with prejudice.

¶ 22    In the alternative, the court stated, even if the doctrine of election did not apply to trusts, general principles of equitable estoppel applied. It explained that, where a person accepted some benefit, that person could not then challenge the validity of the thing that conferred the benefit, including a trust. Because it determined that plaintiffs accepted distributions knowing the terms of the 2012 restatements, they could not challenge the trusts. Finally, in the wake of its section 2-619 dismissal of counts I and II, the court found moot the section 2-615 motion to dismiss counts I and II.

¶ 23    The circuit court entered its written order on May 12, 2017, incorporating its oral findings and rulings from the March 24 hearing. The court also ruled that there was no just reason to delay enforcement or appeal of the dismissal of counts I and II, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 24    Plaintiffs moved to reconsider the circuit court's decision on June 9, 2017, and the circuit court denied that motion on October 27, 2017.

¶ 25    Plaintiffs timely appealed.

¶ 26                                II. ANALYSIS

¶ 27    On appeal, plaintiffs argue that we should reverse the circuit court's section 2-619 dismissal of counts I and II of their complaint because the doctrine of election did not apply to either count, the court erroneously applied the doctrine of equitable estoppel, and the court did not accept their allegations as true.

¶ 28    A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts a defense outside the complaint that defeats it. *Patrick Engineering, Inc. v. City of Naperville*,

2012 IL 113148, ¶ 31. When ruling on such a motion, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that arise from them. *Id.* The pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). We review a dismissal under section 2-619 *de novo*. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31.

¶ 29                                    A. Doctrine of Election

¶ 30    Plaintiffs argue that the doctrine of election did not apply, because there was no choice of accepting benefits under the trusts and at the same time surrendering some right, claim, or property. That is, two different benefits were not at stake. In addition, they argue that the doctrine of election does not apply to trusts in general.

¶ 31    Defendants respond that the doctrine of election applies to trusts and to the facts of this case. They cite several cases in support, including *In re Estate of Joffe*, 143 Ill. App. 3d 438 (1986), *In re Estate of King*, 245 Ill. App. 3d 1088 (1993), and *Kyker v. Kyker*, 117 Ill. App. 3d 547 (1983).

¶ 32    We agree with plaintiffs that the doctrine of election does not apply.

> "Properly understood, the doctrine of election is triggered in the context of wills only when there are two different benefits to which a person is entitled, the testator did not intend the beneficiary to take both benefits, and allowing the beneficiary to claim both would be inequitable to others having claims upon the same property or fund." *In re Estate of Boyar*, 2013 IL 113655, ¶ 28.

It is " 'indispensable to the application of the doctrine of election, that there be, first, a plurality of gifts or two inconsistent or alternative rights or claims in property devised, the choice of one by the devisee being intended to exclude him from the benefit of the other.' " (Internal quotation

marks omitted.) *Id.* (quoting *Bell v. Nye*, 255 Ill. 283, 285-86 (1912)). The supreme court has explained that the doctrine consistently involves the following choice for a devisee or legatee: (1) accepting benefits under a will and surrendering some claim, right, or property that the will undertook to dispose of or (2) retaining such a claim, right, or property and rejecting the provisions made by the will. *Id.* ¶ 30 (citing case law dating from 1856 to 1946).[3]

¶ 33 When the testator presents a person with a choice between two inconsistent or alternative claims to property and that person elects to accept the benefits pursuant to the provisions of the will, that person will normally be estopped from challenging the will or any part of it. *Id.* ¶ 31. Estoppel is justified for two reasons: (1) honoring the testator's intent and (2) protecting the equitable rights of all others who stand to benefit under the will. *Id.*

¶ 34 Our supreme court has also made clear that, even where the doctrine of election is triggered, the doctrine is not absolute. *Id.* ¶ 32. Acceptance of a benefit does not preclude someone from contending that the will contravenes law or public policy. *Id.* Furthermore, the doctrine will not prevent a subsequent assertion of rights if a person made an election without full knowledge of material facts, including the contents of the will and the circumstances of its execution, and later became cognizant of those facts. *Id.*

¶ 35 We agree with plaintiffs that the doctrine of election did not apply to counts I and II. As our supreme court has made clear, the doctrine applies where the testator intended that a person choose between two or more inconsistent or alternative benefits. Here, the circuit court did not

---

[3] We note that our supreme court has stated that the doctrine of election has fallen out of favor in modern times, with its purposes and application reevaluated and criticized. *Boyar*, 2013 IL 113655, ¶ 28. Prior to the supreme court's consideration of the doctrine in 2013, it had not considered it for over 50 years. *Id.*

identify any right, claim, or property that William and Louise intended for plaintiffs to forgo or relinquish in order to accept a monetary distribution from their trusts, and the record does not support that there was any such choice between two or more benefits for plaintiffs to make. In other words, plaintiffs were not choosing between two or more exclusive benefits devised by their parents; they were simply accepting a benefit to which they were entitled, and therefore the doctrine of election has no application. See *Centrue Bank v. Voga*, 2017 IL App (2d) 160690, ¶ 47 (explaining that the trial court erred in finding an election under a trust by mere acceptance of benefits conferred by the trust; acceptance was not a choice between inconsistent or alternative claims to trust property). Moreover, we need not decide whether the trusts were will substitutes, or whether the doctrine of election extends to trusts, because no election existed to trigger the doctrine.

¶ 36    We also find defendants' case law unpersuasive. In *Kyker*, the court did not actually address the doctrine of election but instead applied the general equitable principle—which we address *infra*—that one who accepts a benefit under a will is precluded from challenging the validity of the will. See *Kyker*, 117 Ill. App. 3d at 551-54. Likewise, the *Joffe* court addressed the doctrine of election in name only. The *Joffe* court described the doctrine as meaning that "one cannot simultaneously accept benefits conferred by a will while setting up claims contrary to the terms of the document itself" (*Joffe*, 143 Ill. App. 3d at 440), but it made no reference to a choice between two or more gifts or alternative or inconsistent claims devised by the testator (see *Boyar*, 2013 IL 113655, ¶¶ 30-31). Thus, the *Joffe* court did not substantively analyze the doctrine as described by our supreme court in *Boyar* (see *id.* ¶ 40 ("[S]eparate and apart from the doctrine of election, there is a general principle of equity which holds that once one accepts some benefit, one cannot then challenge the validity of the thing by which the benefit was

conferred.")), even though it referred to the "general equitable doctrine of election" (*Joffe*, 143 Ill. App. 3d at 440). Finally, defendants' reliance on *King* continues the trend of putting form over substance. The *King* court used the term "doctrine of election," but, citing *Kyker* and *Joffe*, it actually described equitable estoppel. *King*, 245 Ill. App. 3d at 1092.

¶ 37 Thus, the circuit court erred in dismissing counts I and II pursuant to the doctrine of election.

¶ 38                    B. Equitable Estoppel

¶ 39 In the alternative, the circuit court dismissed counts I and II under the doctrine of equitable estoppel. Plaintiffs argue that the court misapplied the doctrine. Citing *Boyar*, they argue that a partial monetary distribution does not implicate equitable estoppel.

¶ 40 Separate from the doctrine of election, a general principle of equity precludes one who accepts a benefit from thereafter challenging the validity of the thing that conferred the benefit. *Boyar*, 2013 IL 113655, ¶ 40. Here, there is no dispute that plaintiffs accepted benefits from the trusts when they accepted monetary distributions. We note, however, that count I did not directly challenge the 2012 restatements. Count I was for tortious interference with inheritance expectancy, the elements of which are (1) the existence of an expectancy; (2) the defendant's intentional interference therewith; (3) tortious conduct such as undue influence, fraud, or duress; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages. *DeHart v. DeHart*, 2013 IL 114137, ¶ 39. Our supreme court has made clear that a will contest, which is similar to the trust contest here, "is distinct from a tort action for intentional interference with testamentary expectancy." *Id.* Importantly, one who tortiuously prevents another from receiving an inheritance is subject to liability for the loss, and "[t]he remedy is not the setting aside of the will, but a judgment against the individual defendant." *Id.*

Thus, the court erred in applying equitable estoppel to count I, because the tort claim was distinct from a challenge to the validity of the trusts.[4]

¶ 41    Count II, on the other hand, sought to rescind the 2012 restatements based on William's lack of capacity. The acceptance of benefits from the trusts thus implicated the doctrine of equitable estoppel because plaintiffs were challenging the 2012 restatements' validity. Moreover, *Boyar* does not help plaintiffs here. In *Boyar*, the plaintiffs were not seeking to invalidate substantive provisions of the trust. *Boyar*, 2013 IL 113655, ¶ 41. Rather, they were challenging a trustee appointment made pursuant to the terms of the trust, and, regardless of the identity of the trustee, "the substantive terms of the trust and the disposition of trust property would be unchanged." *Id.* Here, on the other hand, plaintiffs were directly challenging substantive trust provisions by seeking rescission. That is, substantive trust provisions regarding rights and claims to real estate would be affected by plaintiffs' successful challenge.

¶ 42    There are, however, two well-recognized exceptions to the estoppel principle. *Voga*, 2017 IL App (2d) 160690, ¶ 51. First, estoppel does not apply where the acceptance of a benefit was made without full knowledge of the relevant facts and circumstances, including the contents of the will or trust and the circumstances surrounding the instrument's execution, or where the acceptance of a benefit was procured or induced by fraud or mistake. *Id.* Second, a person who accepts benefits under a will or trust is not precluded from questioning the validity of any provisions that are contrary to law or public policy. *Id.*

---

[4] To wit, the complaint sought a judgment against John and Diane "in such amount that [plaintiffs] would have received from the decedent's and her husband's estate but for their conduct."

¶ 43    Here, plaintiffs are asserting not that the provisions of the 2012 restatements are contrary to law or public policy, but only that William lacked the capacity to revise his trust. Thus, the second exception is not implicated. Plaintiffs contend, however, that (1) their acceptance was procured by fraud or mistake and (2) they never actually accepted any benefit from William's trust. In particular, plaintiffs argue that John and Jerry made false statements of fact, including their representation that each sibling would receive around $30,000 when, in fact, an additional $200,000 remained in the trusts after the distributions. While Ramon's March 17 letter to plaintiffs stated that the trusts would retain funds for various expenses, it did not disclose that around $200,000 would be withheld. They argue that, by withholding information about trust provisions and accountings of the trust funds, John and Jerry intended to induce plaintiffs to accept the monetary distributions of $31,200.71, so that plaintiffs would be precluded from challenging the trusts later. Plaintiffs argue that they relied on John and Jerry's representations and that they were damaged when precluded from challenging the trusts. As to their knowledge of material facts, plaintiffs contend that (1) they never saw a copy of the original trusts until September 2015, months after accepting the distributions; (2) the only accounting of the trusts' funds was received on May 29, 2015, also after they accepted the distributions; and (3) the copy of William's 2012 restatement filed with this action has differences from the copy plaintiffs received in September, in particular the locations of William's initials and the notary seal.[5]

¶ 44    We do not believe that plaintiffs sufficiently alleged that their acceptance of benefits was procured by fraud or mistake based on the alleged additional funds in the trusts. It is speculative to conclude that plaintiffs would not have accepted the $31,200.71 disbursements had they

---

[5] Indeed, our review of the trust documents in the record shows that the locations of William's initials and the notary seal vary.

known that more funds were available. They were clearly entitled to the funds they accepted, and equitable estoppel would not preclude them from suing for additional money owed under the trusts, because they would be seeking to *enforce* the trust provisions as opposed to challenging the validity of the trusts. *Cf. Boyar*, 2013 IL 113655, ¶ 41 (equity did not prevent a challenge to the appointment of a trustee, because the challenge was not to the validity of the trust provisions).

¶ 45    The more pertinent concern is plaintiffs' full knowledge of the relevant facts and circumstances surrounding the provisions of the 2012 restatements and the circumstances of their execution. In arguing fraud, plaintiffs averred that they never saw the original trusts prior to accepting their monetary distributions. While there is no dispute that plaintiffs had knowledge of the 2012 restatement provisions when they accepted the monetary distributions, the original trusts were important to plaintiffs' understanding that substantive changes to the trust provisions had occurred. Unlike the original trusts, the 2012 restatements provided John the right to a 40-acre plot of real estate. The 2012 restatements also revised John's option to purchase the additional farmland, lowering the purchase price from 80% to 70% of fair market value; extended the length of his option to purchase the farmland from 2 to 7 years; and extended the maximum purchase price deferment from 5 to 10 years. Without knowledge that the substantive provisions of the trusts had changed to their detriment before they accepted the $31,200.71 disbursements, plaintiffs had no reason to challenge the trust instruments and decline the monetary distributions. Noting that equitable estoppel is grounded in principles of fairness (see *id.* ¶ 40), we hold that it was error to dismiss count II under principles of equitable estoppel when plaintiffs did not have reason to suspect that they were harmed by the 2012 restatements prior to accepting the benefits.

¶ 46 In addition, we find merit to plaintiffs' argument that they did not receive their monetary distributions from William's trust. We note that, pursuant to section 2-619, the facts are to be construed in the light most favorable to plaintiffs. Therefore, a factual dispute between the parties should not result in dismissal where plaintiffs have evidence from which one could reasonably conclude that Louise's trust was the source of the distributions. Plaintiffs point to the check register for Louise's trust, which clearly shows six checks in the amount of $31,200.71, one for each of the six siblings. While defendants argue that some of the funds in Louise's trust came from William's and retained their identity as William's funds, the fact remains that this is a motion to dismiss, and a document showing the monetary distributions coming from Louise's trust—and another document showing no distributions coming from William's—created a factual dispute sufficient to survive dismissal.

¶ 47 As to the distribution of William's personal property, we note that each version of William's trust provided that upon his death any tangible personal property not distributed pursuant to his written direction would go to Louise. As he predeceased Louise, his undistributed tangible personal property would have become hers—and thus part of her trust—to be distributed in equal shares to her surviving children. Defendants assert that at no time was William's tangible personal property conveyed to Louise's trust, citing article 2 of his will, which gave his tangible personal property to the trustee of his trust to administer. However, this ignores article 3 of William's *trust*, which expressly gave to Louise all tangible personal property not otherwise disposed of by the trustee. Therefore, to the extent that plaintiffs took personal property from Louise's home, such as furniture or clothing, we cannot say on a motion to dismiss that it was a distribution from William's trust.

¶ 48                                III. CONCLUSION

¶ 49    We reverse the judgment of the Boone County circuit court and remand for further proceedings.

¶ 50    Reversed and remanded.