# Illinois Official Reports

## Appellate Court

---

### *Gwinn v. Gwinn*, 2016 IL App (2d) 150851

---

| | |
|---|---|
| Appellate Court Caption | KENNETH GWINN, JR.; GEORGE GWINN, and ROBERT GWINN, Plaintiffs-Appellants, v. KENNETH GWINN, SR.; MARIA MAY FRITZ, a/k/a Maria May Gwinn, Defendants (Kenneth Gwinn, Sr., Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-15-0851 |
| Filed | August 15, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-CH-3347; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Kenneth J. Vanko and Gregory P. Adamo, both of Clingen, Callow & McLean, LLC, of Lisle, for appellants.<br><br>Patrick J. Williams and Vincent C. Mancini, both of Ekl Williams & Provenzale LLC, of Lisle, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Jorgensen concurred in the judgment and opinion. |

¶ 1    Plaintiffs, Kenneth Gwinn, Jr., George Gwinn, and Robert Gwinn, filed a four-count complaint against Kenneth Gwinn, Sr. (defendant), and Maria May Fritz—their father and his wife. Plaintiffs' action centered on distributions that defendant made as both the trustee and the primary beneficiary of the Betty M. Gwinn Trust, which his late wife (Betty) established. The trial court dismissed plaintiffs' complaint for failure to state a claim upon which relief could be granted (735 ILCS 5/2-615 (West 2014)). Plaintiffs appeal the dismissal only of the first two counts, directed against defendant but not Fritz. They contend that these counts stated causes of action for, respectively, breach of the trust and breach of fiduciary duty. We reverse and remand.

¶ 2    Plaintiffs' second amended complaint, filed April 23, 2015, alleged as follows. Plaintiffs are three of defendant and Betty's four children. Kenneth Jr. resides in West Bloomfield, Michigan; Robert resides in Oak Brook, Illinois; and George resides in Scottsdale, Arizona. The fourth child, Katherine Weyrens, is not involved in this case. Defendant resides in both Oak Brook, Illinois, and Montrose, Colorado. Fritz resides in Montrose, Colorado.

¶ 3    On May 8, 2002, Betty executed the trust. She named herself and defendant as initial trustees. The "Declaration of Trust" (Trust Agreement) stated that Betty had four children now living: plaintiffs, who resided at the addresses given in the second amended complaint, and Weyrens, who resided in Topeka, Kansas. Article I stated in part, "I intend by this Trust Agreement to provide for my spouse and all my children." Article IV stated that, should Betty predecease defendant, the trustee shall divide the trust property into two separate trusts, the "Marital Trust" and the "Family Trust." The former would consist of "an amount equal in value to the smallest amount of the federal estate tax marital deduction allowable to [Betty's] estate that will result in the least possible federal estate tax being payable at [her] death." The latter would consist of the balance of the trust property.

¶ 4    According to the second amended complaint, in 2009, the trust assets' total value was less than the federal estate-tax exclusion of $3.5 million. Thus, the Family Trust contained all the trust assets.

¶ 5    Article IV, section 2, stated, as pertinent here:

"The Marital Trust shall be administered by the trustee for the benefit of my spouse as follows:

(a) The trustee shall pay or apply for my spouse's benefit, at least quarterly during my spouse's lifetime, all of the net income from the Marital Trust.

(b) The trustee shall also distribute to or for my spouse's benefit as much of the principal of the trust as is necessary or advisable for my spouse's education, health, maintenance, companionship, enjoyment, medical care, comfort, support and general welfare. The trustee shall take into consideration, to the extent that the trustee deems advisable, any income or resources of my spouse which are outside of the trust and are known to the trustee.

(c) Notwithstanding provisions (a) and (b) above, the trustee shall also distribute any part or all of the principal of the Marital Trust to my spouse at any time upon his written request. Such distribution must be made pursuant to my spouse's voluntary request, and shall not include involuntary distributions."

¶ 6        Section 4 of article IV stated, as pertinent here:

"The Family Trust shall consist of the balance of the trust property and shall be administered by the trustee for the benefit of my spouse during his lifetime as follows:

(a) The trustee shall pay or apply for my spouse's benefit, upon his written request, during my spouse's lifetime, any part or all of the net income from the Family Trust. ***

(b) In addition, the trustee shall pay to my spouse such amounts of principal as he from time to time requests in writing, but not to exceed in any calendar year five thousand dollars ($5,000.00) or five percent of the value of the Family Trust at the end of such year, whichever is greater.

(c) The trustee may also pay to my spouse such sums from principal as the trustee deems necessary or advisable from time to time for his health, support and maintenance in reasonable comfort.

(d) The trustee may pay so much or all of the trust's income and principal not distributed to my spouse to my children, as the trustee determines to be required or desirable for their health, maintenance in reasonable comfort, education and best interests individually and as a family group. The trustee may make payments in equal or unequal proportions at such time or times as the trustee deems best.

(e) My primary concern with respect to my children is for their care and education until they become self-supporting and, while my general plan is to treat them alike, I recognize that needs will vary from person to person and from time to time. Accordingly, I direct that all distributees [*sic*] hereunder need not be treated equally or proportionally for each distribution; that the pattern followed in one distribution need not be followed in others; and that the trustee may give such consideration to the other resources of each of the eligible distributees [*sic*] as the trustee may think appropriate."

¶ 7        Article V, section 1, established that, when both Betty and defendant were deceased, all undistributed trust assets would be divided in equal shares among their four children. Article VII, section 1, set out the powers of the trustee. Subsection (n) specifically gave the trustee the power "[t]o make gifts of trust assets to [Betty's] descendants." Section 1 did not elsewhere set out any power to make gifts.

¶ 8        The second amended complaint continued as follows. Betty died on February 16, 2009, and defendant became the sole trustee of the trust. In 2010, the trust owned liquid assets totaling $600,000 and farm property of unknown value. Defendant's right to access trust principal was limited by sections 4(b) and 4(c) of article IV of the Trust Agreement. In August 2011, defendant married Fritz. Since then, he had invaded the Family Trust's principal and liquidated assets in violation of the Trust Agreement. As pertinent to this appeal, in 2011, defendant removed at least $425,000 in principal to make an "exceptional gift" to Fritz—the construction of a custom-built home in Montrose, Colorado, titled in her name alone. Defendant already had an unencumbered residence in Oak Brook worth more than $750,000.

¶ 9        As is relevant to this appeal, count I of the second amended complaint alleged (1) that defendant had breached the Trust Agreement by "[m]aking an extraordinary gift" to Fritz in building the home in Colorado and titling it in her name; (2) that the home was not necessary for defendant's " 'health, maintenance and support,' " because he already had the home in Oak Brook; and (3) that plaintiffs, "as remainder, contingent beneficiaries of the Trust," had

suffered damages, because the trust's assets had been depleted. Count I prayed for an order replacing defendant as trustee and a judgment in favor of the trust for $500,000. Count II alleged that defendant as trustee had violated his fiduciary duty to plaintiffs. It requested the same relief as count I and the imposition of a constructive trust on the Colorado home.

¶ 10        Fritz, who was named as a defendant in counts II and III, was later dismissed from the action, based on a lack of personal jurisdiction. Defendant moved to dismiss the second amended complaint for failure to state a cause of action. As pertinent here (counts I and II), his motion argued as follows. As trustee of the trust, defendant had broad discretion to decide how to exercise his powers under the Trust Agreement. Plaintiffs' second amended complaint had essentially ignored that section 4(c) of the Trust Agreement authorized him to pay himself, out of trust principal, whatever he deemed "necessary or advisable from time to time for his health, support and maintenance in reasonable comfort." The second amended complaint had pleaded no facts to show that he had exceeded his powers by building a new home in which he could reside with his new wife. Further, he argued that count II pleaded no facts not pleaded in count I, and as the Trust Agreement allowed him to do what he had done, that count did not state a claim for breach of fiduciary duty.

¶ 11        Plaintiffs responded that defendant's discretion as trustee was not unlimited. Specifically, by section 4(c) of the Trust Agreement, Betty intended to allow defendant to withdraw only what was "necessary or advisable from time to time for his *health, support and maintenance*" in reasonable comfort. (Emphasis added.) Plaintiffs argued that the language we emphasize is a long-recognized limitation on trustee discretion and here meant that section 4(c) did not allow defendant to deplete the trust's assets by making extraordinary gifts, such as a luxury second house titled in Fritz's name. Plaintiffs also contended that count II stated a cause of action because defendant had not acted in good faith in making the gift to Fritz to their detriment.

¶ 12        Defendant replied that he had paid for the Colorado house, in which both he and Fritz would live; he had not given her the money. He argued that having a house where she lived was reasonably related to his health, support, and maintenance in reasonable comfort.

¶ 13        The trial court dismissed the second amended complaint. Plaintiffs timely appealed.

¶ 14        On appeal, plaintiffs contend solely that the trial court erred in dismissing the first two counts of the second amended complaint, and they limit their argument to the claim that, in buying the Colorado residence and titling it in Fritz's name, defendant violated the Trust Agreement and breached his fiduciary duty. For the reasons that follow, we reverse and remand for further proceedings.

¶ 15        The question presented by a section 2-615 motion is whether the complaint's allegations, when taken as true and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). A cause of action should not be dismissed under section 2-615 unless it clearly appears that no set of facts can be proved that would entitle the plaintiff to recover. *Id.* Our review is *de novo*. *Id.*

¶ 16        We consider together count I's claim of breach of the Trust Agreement and count II's claim of breach of fiduciary duty. To do so, we must construe the terms of the Trust Agreement. Our goal is to ascertain and effectuate the settlor's intent, if not contrary to public policy. *Brown Brothers Harriman Trust Co. v. Bennett*, 357 Ill. App. 3d 399, 406 (2005). We consider the entire document, giving words their plain and ordinary meaning to the extent possible. *Id.*

¶ 17       The primary dispute between the parties is the degree of discretion that Betty intended to give defendant, as both trustee and primary beneficiary of the trust, in distributing the principal of the Family Trust. Plaintiffs focus generally on Betty's desire to provide not only for defendant but for her four children. They cite her initial statement, "I intend by this Trust Agreement to provide for my spouse *and all my children*," and section 4(e)'s expression that her "concern with respect to [her] children is for their care and education until they become self-supporting." (Emphasis added.) Plaintiffs also argue that section 4(c) of the Trust Agreement limits the purposes for which defendant may withdraw and apply principal from the Family Trust and that those purposes do not include buying a house for Fritz and titling it in her name. As noted above, section 4(c) states: "The trustee may also pay to my spouse such sums from principal as the trustee deems necessary or advisable from time to time for his *health, support and maintenance in reasonable comfort*." (Emphasis added.) Plaintiffs focus on the words that we emphasize, arguing that "health, support and maintenance" is a recognized term of art that objectively limits a trustee's discretion. Defendant, on the other hand, draws our attention to the preceding phraseology that appears to reserve the determination of what comes within this standard to him as trustee. Defendant notes that he may withdraw not only what is "necessary" to his health, support, and maintenance in "reasonable comfort" but also what is "advisable" for that purpose.

¶ 18       We note that Betty's primary intention in creating both the Marital Trust *and* the Family Trust was to provide "for the benefit of [her] spouse during his lifetime," *i.e.*, defendant. Moreover, even Betty's expression of her intentions toward her children was qualified: her "primary concern" was "*for their care and education until they become self-supporting.*" (Emphasis added.) Thus, Betty unmistakably gave defendant the authority as trustee to provide for himself as the primary beneficiary of the trust (within limits that we shall discuss) but with no particular obligation to support plaintiffs from the trust while he was alive.

¶ 19       That does not mean, of course, that defendant could do whatever he wanted with trust property. Section 4(c) gave defendant the prerogative to withdraw whatever he deemed "necessary *or advisable* from time to time for his health, support and maintenance in reasonable comfort." (Emphasis added.) However, we need not decide whether this language did or did not forbid defendant from using large sums of principal to construct a residence in Colorado for his own use, even if he already had an unencumbered residence in Illinois, because that is not what this case is about. Instead, this case is about an extraordinary gift. Plaintiffs alleged in the second amended complaint that defendant made an "extraordinary gift" to Fritz, his new wife, by using trust principal to design and purchase a custom-built home and title it in her name. We must take this allegation as true for purposes of addressing defendant's motion to dismiss. See *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 53 (in ruling on a motion to dismiss pursuant to section 2-615, the court "must accept as true all well-pleaded facts in the complaint, as well as any reasonable inferences that may arise from them"). The only question is whether defendant, as trustee, was authorized under the Trust Agreement to make such a gift of trust principal to Fritz.

¶ 20       We agree with plaintiffs that this is not the exceptional case in which a trustee has essentially absolute control over trust assets. In *Rock Island Bank & Trust Co. v. Rhoads*, 353 Ill. 131 (1933), the decedent's will gave his wife as executor and primary beneficiary " 'full authority to use and dispose of so much of [the residue of his estate] as may in her judgment be necessary for her comfort and *satisfaction* in life.' " (Emphasis added.) *Id.* at 134. The supreme

court held that, given the minimally restrictive term "satisfaction," the wife's decision about the use of assets "was not subject to review by anyone." *Id.* at 143. Thus, even bad investments that lost money (such as those that the decedent's executor challenged after the wife died and left a will (*id.* at 137-38)) had been within her "unlimited discretion" to dispose of remaining assets (*id.* at 142).

¶ 21　　Here, the pertinent language is not quite so lax. Section 4(c) does not use the term "satisfaction." It restricts defendant's choices to what he deems, in his discretion, to be "necessary or advisable" to serve his health, support, and maintenance. We find nothing in section 4(c), however, that would allow defendant to make gifts of trust assets. We note that our interpretation is consistent with the Restatement (Third) of Trusts § 50 cmt. d(2) (2003), which explains that provisions for using trust assets for the support and maintenance of a beneficiary do not authorize distributions in order to enlarge the beneficiary's personal estate or to enable the making of extraordinary gifts. See also *In re Estate of Polley*, 111 Ill. App. 3d 873, 875-78 (1982) (decedent's will authorized husband to use corpus "for his support in his accustomed manner of living" but not to build up own separate estate).

¶ 22　　In interpreting section 4(c) of the Trust Agreement, we are also mindful that article VII, section 1(n), of the Trust Agreement gives defendant, as trustee, the power "[t]o make gifts of trust assets to [Betty's] descendants." We agree with plaintiffs that, under the familiar principle of construction *expressio unius est exclusio alterius*, the express *grant* of power to make gifts of assets to Betty's descendants is an implied *denial* of power to make gifts of assets to any person other than Betty's descendants. See *Altenheim German Home v. Bank of America, N.A.*, 376 Ill. App. 3d 26, 36 (2007); *Woolard v. Woolard*, 547 F.3d 755, 759-60 (7th Cir. 2008).

¶ 23　　Since the allegations of the second amended complaint must be taken as true and viewed in the light most favorable to plaintiffs, and as those allegations include that defendant titled the Colorado home exclusively in Fritz's name, we must conclude that plaintiffs stated a claim that defendant violated the Trust Agreement by making a gift that he was not authorized to make. For the same reason, plaintiffs stated a claim that he violated his fiduciary obligation.

¶ 24　　We reverse the judgment of the circuit court of Du Page County, and we remand the cause for further proceedings.

¶ 25　　Reversed and remanded.